EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sylmarie Orraca López, en Representación del menor GRO<br><br>      Recurridos<br><br>           v.<br><br>Estado Libre Asociado de Puerto Rico; Departamento de Educación<br><br>      Peticionarios | Certiorari<br><br>2014 TSPR 139<br><br>192 DPR ____ |

Número del Caso: CC-2014-270


Fecha: 10 de noviembre de 2014


Tribunal de Apelaciones:

    Región Judicial de San Juan


Oficina de la Procuradora General:

    Lcda. Margarita Mercado Echegaray
    Procuradora General

    Lcda. Milvia A. Rivera Rivera
    Procuradora General Auxiliar


Abogado de la Parte Recurrida:

    Lcdo. Osvaldo Burgos Pérez


Materia: Ley Federal de Educación Especial – Término para reclamar honorarios de abogado al amparo de la Ley IDEA (por sus siglas en inglés)


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sylmarie Orraca López, en
representación del menor GRO

    Recurridos

      v.                         CC-2014-270      Certiorari

Estado Libre Asociado de Puerto
Rico; Departamento de Educación

    Peticionarios


Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ
(Regla 50)


San Juan, Puerto Rico, a 10 de noviembre de 2014.

Como parte de nuestro deber y responsabilidad de pautar el derecho e imprimirle la mayor certeza posible, nos corresponde determinar cuál de los plazos prescriptivos dispuestos en nuestro ordenamiento jurídico resulta más análogo para incoar la reclamación de honorarios de abogado al amparo de la Ley Federal de Educación Especial conocida como *Individuals with Disabilities Education Act*, *infra*.

Con el convencimiento de que el término prescriptivo más análogo para instar la aludida causa de acción es el que surge del Art. 1867 del Código Civil de Puerto Rico, *infra*, expedimos el

recurso ante nuestra consideración con miras a confirmar el dictamen emitido por el foro recurrido. Sin duda, este proceder es cónsono tanto con la política pública como con el alto interés en que se funda la referida legislación federal.

A continuación, pasamos a reseñar los antecedentes fácticos y procesales que suscitaron la polémica ante este Tribunal.

**I**

La controversia de marras tuvo su génesis el 4 de junio de 2010, cuando la Sra. Sylmarie Orraca López (señora Orraca López) presentó una querella ante la Unidad de Querellas del Programa de Educación Especial (Unidad de Querellas), adscrita al Departamento de Educación (Departamento), con el propósito de vindicar los derechos de su hijo menor de edad. En esencia, la señora Orraca López solicitó que se le ordenara al Departamento la compra de servicios educativos privados debido a la falta de ofrecimientos educativos adecuados para su hijo, quien padece de daño cerebral, así como de problemas motores, del habla y de aprendizaje. Celebrada la correspondiente vista, el 20 de julio de 2010, el foro administrativo emitió una Resolución en la cual declaró con lugar la querella incoada por la señora Orraca López.[1]

Posteriormente, el 23 de marzo de 2011, la señora Orraca López presentó una segunda querella ante la Unidad

_____

[1]Este dictamen advino final y firme el 19 de agosto de 2010.

de Querellas. En esa ocasión, requirió que se le ordenara al Departamento proveerle al menor un equipo de asistencia tecnológica para su pie derecho. Luego de la celebración de la vista, el 18 de septiembre de 2011, el foro administrativo dictó una Resolución en la que declaró con lugar la querella reseñada.[2]

Tras prevalecer en el procedimiento administrativo, el 17 de julio de 2012, la señora Orraca López presentó una demanda ante el Tribunal de Primera Instancia. En ésta, reclamó al Estado Libre Asociado (ELA) el pago de los honorarios de abogado al amparo de la Ley Federal de Educación Especial, conocida como la *Individuals with Disabilities Education Act* (IDEA), 20 USCA sec. 1415(i)(3)(B)(i)(I). En particular, la señora Orraca López le requirió al ELA la suma de $3,225 por concepto de honorarios de abogado incurridos en el procedimiento administrativo y el pago de $2,500 por los honorarios de abogado concernientes a la presentación de la demanda, así como las costas y gastos por la tramitación del litigio.

Luego de varios incidentes procesales, el 31 de octubre de 2012, la señora Orraca López presentó una solicitud de sentencia sumaria. Mediante ésta, alegó que no existía controversia sobre hechos materiales y que IDEA permitía la concesión de honorarios de abogado a favor de la parte prevaleciente en el procedimiento administrativo. A raíz de ello, adujo que procedía dictar sentencia

---

[2]Esta Resolución advino final y firme el 18 de octubre de 2011.

sumaria a su favor, puesto que prevaleció en sus reclamos ante el foro administrativo. En consecuencia, solicitó el pago de $3,225 por concepto de honorarios de abogado concernientes a la tramitación del caso ante la Unidad de Querellas. Ello, por un total de 21.50 horas trabajadas y facturadas a razón de $150 por hora. A su vez, reclamó el pago de $1,537 por los honorarios de abogado incurridos en el trámite judicial, lo cual correspondía a un total de 10.25 horas trabajadas y facturadas a base de la mencionada tarifa.

El 25 de junio de 2013, el ELA presentó su oposición a la solicitud de sentencia sumaria. En lo pertinente, alegó que la causa de acción instada por la señora Orraca López estaba prescrita. Argumentó que aunque IDEA permite la concesión de honorarios a favor de la parte prevaleciente en el procedimiento administrativo, no establece un término prescriptivo para incoar tal acción. Por tanto, arguyó que se debía aplicar, por analogía, el término prescriptivo de 30 días que dispone la Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 2172, para la revisión judicial de las determinaciones administrativas. Del mismo modo, el ELA sostuvo que no procedía dictar sentencia sumaria por existir controversia en relación a las horas facturadas en el trámite administrativo y porque éstas no eran razonables.

Trabada la controversia en esos términos, el 3 de septiembre de 2013, el foro primario emitió una Sentencia

en la que declaró ha lugar la moción de sentencia sumaria presentada por la señora Orraca López. En su dictamen, el aludido foro determinó que el plazo prescriptivo dispuesto en la citada Sec. 4.2 de LPAU no era el más análogo para la causa de acción en cuestión. Sostuvo que la petición de honorarios de abogado al amparo de IDEA es una causa de acción independiente del caso administrativo. De esta forma, concluyó que el término prescriptivo más análogo era el establecido en el Art. 1867 del Código Civil de Puerto Rico, 31 LPRA sec. 5297, el cual concede el término de 3 años para reclamar el pago de honorarios de abogado.

En lo concerniente a la cuantía de los honorarios, el foro de instancia determinó que el ELA logró controvertir la razonabilidad de la tarifa de $150 por hora, por lo que la modificó a $100 la hora. Para ello, se amparó en el Memorando Circular Núm. 07-93 de la Oficina del Gobernador. A raíz de lo anterior, le impuso al ELA el pago de $3,175 por concepto de honorarios de abogado incurridos por la señora Orraca López tanto en el trámite administrativo como en el judicial. Ante el dictamen emitido, ambas partes presentaron mociones de reconsideración, pero fueron declaradas no ha lugar.

Inconforme, el ELA acudió ante el Tribunal de Apelaciones. En su comparecencia, reprodujo los argumentos expuestos ante el foro apelado en relación al plazo prescriptivo para la reclamación de honorarios de abogado basada en la citada sección de IDEA. Asimismo, objetó el

tiempo facturado por el representante legal de la señora Orraca López en los trámites administrativos y judiciales.

Por su parte, la señora Orraca López presentó un alegato en el cual planteó que el término prescriptivo más análogo para la reclamación en cuestión era el dispuesto en el referido Art. 1867 del Código Civil. A su vez, sostuvo que el foro primario incidió al reducir el pago por las horas facturadas. Ante ello, solicitó el pago de honorarios de abogado a razón de $150 por hora, al igual que la concesión de honorarios de abogado, costas y gastos por motivo de la tramitación del procedimiento apelativo.

Así las cosas, el 7 de marzo de 2014, el Tribunal de Apelaciones emitió una Sentencia en la que modificó el dictamen apelado. Al igual que el foro primario, el apelativo dictaminó que IDEA provee para que la parte prevaleciente en el procedimiento administrativo entable una causa de acción independiente ante un foro judicial para recobrar los honorarios de abogado incurridos. Luego de analizar la causa de acción en cuestión, concluyó que ésta no era de naturaleza apelativa. Amparándose en ese fundamento, determinó que el término establecido en la mencionada Sec. 4.2 de la LPAU no constituía el más análogo. En cambio, señaló que el plazo establecido en el Art. 1867 del Código Civil guardaba mayor analogía con la citada sección de IDEA. Por consiguiente, determinó que a la causa de acción por concepto de honorarios de abogado que autoriza IDEA le aplicaba el término prescriptivo de 3

años, por lo que la reclamación de la señora Orraca López no estaba prescrita.

Por otra parte, el Tribunal de Apelaciones decretó que el número de horas invertidas en el trámite administrativo por el representante legal de la señora Orraca López era razonable. Ante ello, dictaminó que la reducción de la tarifa de $150 a $100 por hora efectuada por el foro primario era improcedente. De acuerdo al foro apelativo, el memorando utilizado para ello no aplicaba al presente caso y, además, fue expresamente derogado por la Ley Núm. 237-2004. Así las cosas, revocó la reducción de la tarifa. Finalmente, le impuso al ELA el pago adicional de $600 por el trámite apelativo incurrido por la señora Orraca López.

Ante este proceder, el 7 de abril de 2014, el ELA recurrió ante este Tribunal mediante un recurso de *certiorari* y señaló la comisión de los errores siguientes:

> Erró el Tribunal de Apelaciones al concluir que el término prescriptivo para instar una reclamación de honorarios de abogado al amparo del estatuto federal IDEA es de tres (3) años contemplado en el Artículo 1867 del Código Civil de Puerto Rico y no el de treinta (30) días dispuesto en la LPAU.

> Erró el Tribunal de Apelaciones al imponer al Estado $600 por concepto de honorarios de abogado por el trámite apelativo, adicionales a los ya otorgados por el Tribunal de Primera Instancia.

Esencialmente, el ELA reproduce los argumentos esgrimidos ante los foros recurridos, en lo referente al plazo prescriptivo para instar la reclamación de honorarios de abogado en virtud de IDEA. En la alternativa, suplica que se deje sin efecto aquella parte

del dictamen del foro apelativo que le impone la obligación de satisfacer a la parte demandante el pago de $600 por el trámite apelativo, adicional a los honorarios de abogado concedidos por el Tribunal de Primera Instancia. Ello, toda vez que el ELA sostiene que tal proceder supondría la imposición mecánica de honorarios por temeridad, aun cuando se trate de un asunto meritorio que se insta ante un foro revisor.

Examinado el recurso presentado por el ELA, y en virtud de la facultad que nos confiere la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, expedimos el auto solicitado y pasamos a resolver la polémica suscitada.

## II

Con el fin de plasmar nuestro discernimiento en torno a la controversia de autos, exponemos el marco estatutario y jurisprudencial pertinente. Procedemos.

Como es sabido, en nuestro ordenamiento jurídico la educación goza de profundas garantías de rango constitucional. Del texto de la Carta Magna de Puerto Rico surge expresamente que: "[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales". Art. II, Sec. 5, Const. ELA, Tomo 1, ed. 2008, pág. 292. En repetidas ocasiones hemos expresado que el fin de este precepto constitucional "es definir las aspiraciones colectivas sobre la educación y crear un sistema de

enseñanza pública a niveles primario y secundario exclusivamente [...] sujeto a que el E.L.A. tenga los recursos necesarios para su implantación". Declet Ríos v. Depto. de Educación, 177 DPR 765, 773 (2009); Asoc. Academias y Col. Cristianos v. ELA, 135 DPR 150, 168-169 (1994). En armonía con el referido mandato de nuestra Constitución, se han promulgado varias legislaciones con la intención expresa de atender los retos educativos de los menores con necesidades especiales. Indudablemente, dentro de los esfuerzos más significativos se encuentra el reconocimiento del derecho de estos menores a recibir y reclamar educación remedial ante los foros judiciales.

Entre las medidas afirmativas que se han efectuado en atención a la educación de los menores con necesidades especiales, se encuentra la aprobación de la *Ley de Servicios Educativos Integrales para Personas con Impedimentos*, Ley Núm. 51-1996 (Ley Núm. 51), 18 LPRA sec. 1351 *et seq*. En observancia del citado precepto constitucional y acorde con la legislación federal en esta materia, el propósito de la Ley Núm. 51 es garantizar educación pública, gratuita, y apropiada a los estudiantes con necesidades especiales que asistan a las escuelas públicas del País. Ello, en el ambiente menos restrictivo posible, a tenor con su plan individualizado de servicios. *Véase*, 18 LPRA sec. 1352.

Cabe señalar que la aprobación de la Ley Núm. 51 respondió a la obligación del Estado de cumplir con las disposiciones de la Ley Federal de Educación Especial,

conocida como *Individuals with Disabilities Education Act*, 20 USCA sec. 1401 *et seq*. Este esquema legal fue promulgado por el Congreso de los Estados Unidos (Congreso) con el propósito de asegurar, entre otras cosas, que todos los menores con necesidades especiales reciban educación pública, apropiada y gratuita, en atención a las necesidades particulares de cada estudiante, y proteger los derechos de éstos y de sus respectivos padres o tutores. A tales fines, el estatuto dispone que los estados y territorios que reciben fondos federales vienen llamados a promover programas de educación especial pública, gratuita y apropiada, diseñados para atender las necesidades especiales y específicas de cada menor. 20 USCA secs. 1415(a). Ello, con el objetivo de prepararlos para oportunidades de empleo en el futuro y, sobre todo, para que lleven sus vidas de manera independiente, entre otros aspectos. 20 USCA sec. 1400(d)(A).

Con relación a los servicios educativos que reciben los menores, tanto IDEA como la Ley Núm. 51 proveen para que aquellos padres o tutores que entiendan que estos servicios no son apropiados o no van acorde con las necesidades especiales del menor, presenten una querella y soliciten una vista administrativa ante un oficial examinador imparcial. 20 USCA sec. 1415(b)(6) y (f); *véase*, además, Art. 4(b)(2)(D) de la Ley Núm. 51, 18 LPRA sec. 1353(b)(2)(D). En síntesis, el foro administrativo correspondiente debe determinar si el menor recibe una

educación pública, gratuita y apropiada en el ambiente donde fue ubicado o si se le niega ese derecho. 20 USCA sec. 1415(f)(3)(E)(i). Ante una determinación adversa emitida por el foro administrativo, la parte perjudicada puede acudir en revisión ante los foros judiciales. 20 USCA sec. 1415(i)(2).

### III

En lo que atañe al caso de marras, señalamos que a partir del 1986 el Congreso autorizó expresamente, al amparo de IDEA, la concesión de honorarios de abogado a la parte que prevalece en el procedimiento administrativo. Esta concesión no persigue sancionar sino, más bien, posibilitar que los padres o tutores de menores con necesidades especiales puedan vindicar los derechos de estos últimos. Declet Ríos v. Dpto. de Educación, *supra*, pág. 778. Asimismo, el estatuto deja claro que conferir los mencionados honorarios estará sujeto a la sana discreción del foro judicial que adjudique tal reclamo. En cuanto al particular, y en lo vinculado al asunto ante nos, IDEA dispone lo siguiente:

(i) Administrative procedures

[...]

(3) Jurisdiction of district courts; attorneys' fees

[...]

(B) Award of attorneys' fees

(i) In general

In **any action or proceeding brought under this section**, the court, in its discretion, may award

**reasonable** attorneys' fees as part of the costs.

(I) to a prevailing party who is the parent of a child with a disability;

20 USCA sec. 1415(i)(3)(B)(i)(I). (Énfasis suplido).

Recientemente, tuvimos la ocasión de pronunciarnos en torno a la citada sección de IDEA. De esta forma, en Declet Ríos v. Dpto. de Educación, *supra*, págs. 779-780, expresamos que para determinar la procedencia de honorarios de abogado al amparo de la aludida sección tienen que cumplirse varios requisitos, a saber: (1) una acción instada al amparo de la Sec. 1415 de IDEA; (2) que los honorarios de abogado sean otorgados a la parte prevaleciente, según dispuesto y definido por el mencionado estatuto y; (3) que la cantidad a concederse sea razonable y determinada conforme a la citada sección.

En Declet Ríos v. Dpto. de Educación, *supra*, también resolvimos quién tiene la facultad para otorgar los honorarios de abogado en virtud de lo dispuesto en IDEA. A tales efectos, declaramos que el texto de IDEA es diáfano e inequívoco en cuanto al particular, por lo que concluimos que solamente los tribunales, en el ejercicio de su sana discreción, pueden conceder tales honorarios de abogado. Íd., pág. 781. Dejamos claro que los padres o tutores de menores con necesidades especiales, que sean la parte prevaleciente en el procedimiento administrativo, pueden acudir tanto al Tribunal de Primera Instancia como al Tribunal de Distrito Federal para que se le confieran los honorarios de abogado. Íd., pág. 787.

**A.**

Ahora bien, en IDEA existe un vacío legislativo pues de sus disposiciones no se desprende cuál es el término prescriptivo para incoar la causa de acción en reclamo de los honorarios de abogado.[3] Al promulgar esta legislación y sus respectivas enmiendas, el Congreso guardó silencio al respecto.[4] Ante esa realidad, debemos impartir contenido al estatuto al adoptar el plazo prescriptivo, ya dispuesto en nuestro ordenamiento jurídico para otras acciones, que sea más análogo con la causa de acción que autoriza IDEA. *Véanse*, Vélez Rodríguez v. Pueblo Int'l, Inc., 135 DPR 500 (1994); Lozada Torres v. Collazo, 111 DPR 702 (1981); Olmo v. Young & Rubicam of PR, Inc., 110 DPR 740 (1981). *Véanse*, además, Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilberston, 501 US 350, 355 (1991) ("*It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court "borrows" or "absorbs" the local time limitation most analogous to the case at hand.*"); Holmberg v. Armbrecht, 327 US 392, 395 (1946) ("*[T]he silence of Congress has*

---

[3]Resulta imperativo traer a colación que este vacío normativo en la citada legislación ha ocasionado la presentación de varios recursos ante esta Curia cuya controversia principal estriba, precisamente, en la falta de un período prescriptivo determinado para entablar la acción en cobro de honorarios de abogado que IDEA reconoce.

[4]Existe una laguna en la ley cuando en ésta, debidamente interpretada, no se encuentra respuesta a la cuestión jurídica planteada. *Véase*, J. Puig Brutau, Compendio de Derecho Civil, Ed. Bosch, 1987, Vol. I, pág. 101.

*been interpreted to mean that it is federal policy to adopt the local law of limitation.*"); <u>Campbell v. Haverhill</u>, 155 US 610, 617 (1895). Ello es lo que se conoce como la doctrina del "*most analogous statute of limitations*", que permite llenar la laguna que causa la falta de un término prescriptivo para entablar una acción. Tal función le compete a los foros judiciales.

En lo concerniente al método de las analogías, el reconocido tratadista Puig Brutau señala lo siguiente:

> Cuando las normas no contemplan el supuesto específico del caso que se ha de resolver, existe una laguna legal; **pero si está previsto otro supuesto semejante al planteado y en ambos se aprecia identidad de razón, la norma del caso regulado podrá aplicarse por analogía al caso que no lo está,** porque la misma razón justifica la identidad de la consecuencia.
> [...]
> No sería justo ni lógico que dentro de un mismo ordenamiento no recibieran la misma solución ambos supuestos, a pesar de sus circunstanciales diferencias, cuando coinciden en lo esencial. La analogía significa **comprobación de igualdad normativa entre dos casos que no son completamente iguales, pero que lo son en grado suficiente para que el régimen jurídico de uno deba ser igualmente el del otro.** J. Puig Brutau, <u>Compendio de Derecho Civil</u>, Ed. Bosch, 1987, Vol. I, pág. 105. (Énfasis suplido).

Empero, en el ejercicio de disipar los vacíos estatutarios, los tribunales deben ser cautelosos, toda vez que no puede adoptarse un término prescriptivo, por más analogía que guarde, que frustre la intención que emana de la ley en cuestión o la política pública que la inspira. <u>Matos v. Junta Examinadora</u>, 165 DPR 741, 748-749 (2005). En el quehacer de interpretar la ley, los foros judiciales deben armonizar, hasta donde sea posible, todas

las disposiciones de la ley con el fin de alcanzar una interpretación integrada, lógica y razonable de la intención legislativa. Íd., pág. 749.

Al examinar el proceder de los tribunales federales con relación a lo que antecede, notamos que entre éstos existe controversia en términos de cuál plazo prescriptivo es el más análogo al reclamo de honorarios de abogado en virtud de IDEA. *Véase*, T. Lin, Recovering Attorney's Fees Under the Individuals with Disabilities Education Act, 180 Ed. Law Rep. 1 (2003). Esencialmente, la ausencia de consenso entre los foros judiciales federales reside en que éstos se encuentran divididos en torno a un asunto medular, esto es: si la reclamación de honorarios de abogado que autoriza IDEA es de **naturaleza accesoria** al procedimiento administrativo o, por el contrario, se trata de una **causa de acción independiente** a éste.[5] Veamos.

Ante una controversia similar a la de autos, en Powers v. Indiana Dept. of Educ., Div. of Special Educ., 61 F.3d 552 (7mo Cir. 1995), el Séptimo Circuito del Tribunal de Circuito de Apelaciones de los Estados Unidos (Tribunal de Circuito) resolvió que el término más análogo para entablar la reclamación de honorarios de abogado al amparo de IDEA, era el de 30 días que establecía el estatuto local de Indiana para acudir en revisión judicial de

---

[5]Para una discusión en cuanto al particular, véase D.A. Craig, Actions Founded on Statutory Liability: Adopting a Limitations Period for Attorneys' Fees Actions Brought Under the Individuals with Disabilities Education Act, 79 Ind. L.J. 493 (2004).

determinaciones administrativas. Amparándose en sus

pronunciamientos previos, el referido foro razonó, en lo

pertinente, que:

> [A]lthough the promptness of a decision on
> attorneys' fees is not as important as a quick
> decision in questions of educational placement,
> both the school district and the parents still
> have an interest—along with the attorney—in the
> expeditious resolution of this matter. Thus we
> concluded that the attorneys' fees claim was in
> many ways ancillary to the judicial review of the
> final administrative decision. Íd., pág. 556.
> (Citas omitidas).

Al resolver el caso King ex rel. King v. Floyd County

Bd. of Educ., 228 F.3d 622 (6to Cir. 2000), el Sexto

Circuito acogió una postura similar a la adoptada por el

Séptimo Circuito. Esto es, determinó que la causa de

acción de honorarios de abogado que reconoce IDEA es

accesoria al procedimiento administrativo, por lo que está

sujeta al término estatutario de 30 días para acudir en

revisión judicial de los dictámenes administrativos. A

tales efectos, el Sexto Circuito expresó lo siguiente:

> It is true that there would be no claim for
> attorney fees were it not for the statute. But
> where the statute creating the claim makes the
> claim part and parcel of the administrative
> proceeding, it seems to us that the statute makes
> the claim analogous to a cause of action for
> judicial review of the proceeding to which the
> claim is appended. That analogy is closer, as we
> see it, than the analogy involving Kentucky's
> general five-year statute of limitations for
> actions on statutory liabilities not subject to
> some other limitations period. It is difficult
> for us to conceive of a legislature intentionally
> authorizing the filing of a fee application up to
> five years after termination of the proceeding to
> which the application relates; it seems most
> unlikely, in other words, that the five-year
> statute was designed for ancillary proceedings of
> the sort in question here, as  opposed  to  claims

that can properly be characterized as independent. Íd., pág. 626.

No obstante, en Zipperer v. Sch. Bd. of Seminole Cnty., 111 F.3d 847 (11mo Cir. 1997), el Undécimo Circuito tomó un proceder disímil al seguido por las determinaciones judiciales reseñadas. Es decir, resolvió que la causa de acción en cuestión guarda más analogía con una **acción independiente**. De esta forma, rechazó la visión de equiparar el reclamo de honorarios de abogado que autoriza IDEA con un recurso de revisión judicial de un dictamen administrativo. El Undécimo Circuito fundamentó su postura en el análisis siguiente:

> [T]he short statutes of limitations associated with appeals of administrative procedures, while appropriate when a child's Individualized Education Plan is at issue in a substantive appeal of an administrative determination, **are too short to vindicate the underlying federal policies associated with the fee-claims provisions of the IDEA.**
> [...]
> We acknowledge that a short period of limitations for claims brought pursuant to section 1415(e)(2) 'assure[s] prompt resolution of disputes over education plans for [disabled] children.' Nonetheless, the resolution of claims for attorneys' fees **is less urgent and, in reality, is more likely to be resolved by the attorneys' interest in prompt payment than by a short period of limitations.** A four-year period of limitations, like the award of attorneys' fees to parents who are prevailing parties, **is likely to encourage the involvement of parents, as represented by attorneys, in securing appropriate public educations for their children.** We conclude that the application of a four-year statute of limitations to claims for attorneys' fees under the IDEA **is consistent with the policies of the federal statute.** Íd., pág. 851. (Énfasis suplido) (Citas omitidas).

Cabe puntualizar que esta Curia también se ha pronunciado en lo concerniente a la referida reclamación

de honorarios de abogado, si bien no hemos pautado cuál es el plazo prescriptivo para incoarla. Al respecto, en Declet Ríos v. Dpto. de Educación, *supra*, pág. 783, aunque sin mencionarlo, seguimos la postura del Undécimo Circuito plasmada en el caso Zipperer v. Sch. Bd. of Seminole Cnty., *supra*. Ello, pues, expresamos que los padres o tutores de menores con necesidades especiales que prevalecen en sus reclamos ante el foro administrativo, pueden acudir a los tribunales en una **acción independiente**, con el propósito de reclamar los honorarios de abogado incurridos. En aquella ocasión, señalamos que la interpretación realizada era conteste con los intereses que el Congreso intenta proteger y con la política pública que emana de la aludida legislación federal. Del mismo modo, concluimos que el dictamen emitido aseguraba el acceso a la justicia de los menores con necesidades especiales y de sus padres o tutores. Declet Ríos v. Dpto. de Educación, *supra*, pág. 786.

Superada en nuestra jurisdicción la disyuntiva que se manifiesta en los tribunales federales en torno a la naturaleza de la reclamación en cuestión, solo nos resta adentrarnos a determinar cuál es el término prescriptivo que debe gobernarla.

## IV

En atención a la controversia particular que nos ocupa, conviene recordar que en nuestro ordenamiento jurídico la prescripción extintiva es una figura de naturaleza sustantiva regida por las disposiciones del

Código Civil. Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 373 (2012); SLG Serrano-Báez v. Foot Locker, 182 DPR 824, 831 (2011); COSSEC *et al.* v. González López *et al.*, 179 DPR 793, 805 (2010); Santos de García v. Banco Popular, 172 DPR 759, 766 (2007). La aludida figura jurídica denota la extinción de un derecho o la liberación de una obligación por motivo de la inercia de una parte en ejercerlo durante un tiempo determinado. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, págs. 372-373; *véase*, además, M.J. Argañarás, La prescripción extintiva, Buenos Aires, TEA, 12 (1966). Su propósito es evitar la incertidumbre en las relaciones jurídicas, castigar la inercia en el ejercicio de los derechos, así como estimular el ejercicio rápido de las acciones. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 373; COSSEC *et al.* v. González López *et al.*, *supra*, pág. 806; Campos v. Cía. Fom. Ind., 153 DPR 137, 143 (2001). Asimismo, busca "promover la seguridad en el tráfico jurídico y la estabilidad de las relaciones jurídicas". Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 373.

En repetidas ocasiones este Tribunal ha señalado que la existencia de plazos prescriptivos responde a una política firmemente establecida que fomenta la solución expedita de las reclamaciones. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 373; Campos v. Cía. Fom. Ind., *supra*, pág. 143. De esta manera, se evita la incertidumbre que acarrea la presentación de antiguas reclamaciones y las consecuencias inevitables que vienen con el transcurso

del tiempo, a saber: pérdida de evidencia, memoria imprecisa y dificultad para encontrar testigos. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 373; Campos v. Cía. Fom. Ind., *supra*, pág. 144.

De acuerdo a nuestros pronunciamientos jurisprudenciales, la prescripción extintiva aplica como cuestión de derecho con el transcurso del tiempo; claro está, con la excepción de que acontezca alguno de los supuestos previstos en nuestro ordenamiento jurídico. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 373; COSSEC *et al.* v. González López *et al.*, *supra*, págs. 805–806; Santos de García v. Banco Popular, *supra*, pág. 766. Ello, pues, del Art. 1873 del Código Civil, 31 LPRA sec. 5303, surge de forma diáfana que "[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor". No obstante, transcurrido el periodo de tiempo establecido por ley sin reclamo alguno por parte del titular del derecho, se origina una presunción legal de renuncia o abandono. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 374; Zambrana Maldonado v. ELA, 129 DPR 740, 752 (1992). *Véase*, además, J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., Barcelona, Bosch, pág. 32 (1996). Por tal motivo, la prescripción conlleva, de ordinario, la desestimación de aquellas reclamaciones incoadas fuera del término previsto para ello.

**A.**

A tono con lo anterior, en Puerto Rico rige la norma de que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". 31 LPRA sec. 5291. A esos efectos, nuestro Código Civil cuenta con un detallado esquema en el cual se delinea el término prescriptivo para las acciones. *Véase*, 31 LPRA secs. 5291-5305. En lo que respecta al asunto ante este Tribunal, el Art. 1867, inciso 1, del referido cuerpo jurídico dispone un plazo prescriptivo de 3 años para el cumplimiento de ciertas obligaciones, entre las que se encuentra la siguiente:

> (1) La de pagar a los jueces, **abogados,** registradores, notarios, peritos, agentes y curiales, **sus honorarios y derechos, y los gastos y desembolsos que hubiesen realizado en el desempeño de sus cargos u oficios en los asuntos a que las obligaciones se refieran.** 31 LPRA sec. 5297(1). (Énfasis suplido).

Aunque los pronunciamientos de este Tribunal en relación al Art. 1867 no son amplios, hemos tenido la oportunidad de examinarlo. A tales fines, en <u>Aponte v. Srio. de Hacienda, ELA</u>, 125 DPR 610, 619-620 (1990), citando a Q.M. Scaevola, <u>Código Civil</u>, Madrid, Ed. Reus, 1965, Tomo XXXII, Vol. 2, pág. 848, expresamos que al promulgar este precepto jurídico el legislador parece haberse "inspirado en una común idea de retribución de los servicios profesionales y laborales". Otros tratadistas, por su parte, sostienen que la prescripción trienal plasmada en el Art. 1867 se aplica a los créditos dirigidos a obtener la remuneración de servicios prestados. L. Díez-Picazo, <u>La prescripción en el Código</u>

Civil, Barcelona, Ed. Bosch, pág. 200 (1964); J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, op. cit., pág. 170.

Al explicar la razón de ser de la limitación temporal, los tratadistas coinciden en que el breve plazo prescriptivo de 3 años está fundado en que los créditos a que se refiere se cobren sin demora o en un tiempo muy corto, pues se entiende que son "deudas de la vida cotidiana, a cuya realización conviene que la ley le dé algún impulso". Díez-Picazo, op. cit., pág. 200; J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, op. cit. pág. 170. Véase, además, Culebra Enterprises Corp. v. ELA, 127 DPR 943, 951 (1991). Por ello, se justifica un acortamiento de los plazos prescriptivos normales.

En virtud de la normativa que antecede, pasamos a resolver la polémica que nos ocupa.

V

Conforme indicamos, tras prevalecer en el foro administrativo correspondiente, la señora Orraca López instó una demanda ante el Tribunal de Primera Instancia con el propósito de reclamar los honorarios de abogado incurridos tanto en el trámite administrativo como en el judicial. Para ello, se amparó en la Sec. 1415(i)(3)(B)(i)(I) de IDEA. Enfrentado con el vacío legislativo en relación al término prescriptivo para incoar la referida causa de acción, el foro primario determinó que el plazo más análogo era el dispuesto en el Art. 1867 de nuestro

Código Civil. Así las cosas, concluyó que la reclamación de la señora Orraca López no estaba prescrita.

Inconforme, el ELA recurrió ante el Tribunal de Apelaciones. En su dictamen, el foro apelativo confirmó que el plazo trienal que surge del Art. 1867 era el más análogo. Asimismo, modificó la partida otorgada por honorarios y, a su vez, le impuso al ELA el pago adicional de $600 por concepto de los honorarios de abogado incurridos por la señora Orraca López en el trámite apelativo. No conteste, el ELA acudió ante este Tribunal.

Tal como expusimos, IDEA guarda silencio en torno a cuál es el término prescriptivo para recobrar los honorarios de abogado en virtud de su Sec. 1415(i)(3)(B)(i)(I). Por tanto, la ley adolece de deficiencias que ameritan ser resueltas. Ante ello y en armonía con los pronunciamientos jurisprudenciales expuestos, esta Curia debe ejercer su facultad para impartir contenido al estatuto en cuestión y, de esa forma, suplir la evidente laguna jurídica mediante la aplicación del plazo prescriptivo más análogo. Ello, particularmente, tratándose de controversias que son susceptibles de repetirse si no se delimita la normativa aplicable.

Examinada la controversia de autos a la luz del marco estatutario y jurisprudencial pertinente, resolvemos que ante la realidad de que en nuestra jurisdicción **la reclamación de honorarios de abogado que IDEA reconoce es una acción independiente del procedimiento administrativo, el período prescriptivo para incoarla es el dispuesto en el**

**Art. 1867 del Código Civil.** Esto es, determinamos que a la causa de acción que permite la Sec. 1415(i)(3)(B)(i)(I) de IDEA le aplica, por ser la más análoga, la llamada prescripción trienal.

Varias razones apoyan a la idoneidad del referido término trienal como el "*most analogous statute of limitations*" para la causa de acción que permite IDEA. Ello, pues, tanto la acción de recobro de honorarios al amparo de la Sec. 1415(i)(3)(B)(i)(I) como la reclamación de honorarios de abogado que surge del inciso 1 del Art. 1867 del Código Civil son: (1) obligaciones de **naturaleza pecuniaria o de cobro de dinero**; (2) procuran el pago de una **obligación de hacer o la retribución de servicios prestados** y; (3) el monto final está sujeto al criterio de **razonabilidad**,[6] entre otros factores. Ninguno de los otros plazos prescriptivos que encontramos en nuestro ordenamiento jurídico se ajusta o guarda estrecha analogía con la naturaleza y objetivos de la causa de acción en cuestión.

Asimismo, somos del criterio que el plazo prescriptivo de 3 años resguarda la política pública e intención que

---

[6]A pesar de la ausencia en disponer lo concerniente al plazo prescriptivo para incoar la reclamación de honorarios de abogado, IDEA sí establece con meridiana claridad que la suma a concederse por concepto de tales honorarios, debe ser **razonable**. *Véase*, 20 USCA sec. 1415(i)(3)(B)(i)(I). A tono con ello, la parte prevaleciente deberá presentar prueba de la cantidad solicitada por concepto de honorarios de abogado, especificándolos adecuadamente, para que el foro judicial, en el ejercicio de su sana discreción, pueda determinar la razonabilidad de la cantidad a imponerse. Declet Ríos v. Dpto. de Educación, 177 DPR 765, 786 (2009).

promueve IDEA. Concluimos que éste no frustra el objetivo en que se fundó la autorización para conferir los honorarios de abogado al amparo de esta ley, a saber: que los padres o tutores tengan acceso a la justicia y puedan vindicar los derechos de sus hijos con necesidades especiales sin verse limitados por razones económicas. Declet Ríos v. Dpto. de Educación, *supra*, pág. 784. *Véase*, además, D.A. Craig, Actions Founded on Statutory Liability: Adopting a Limitations Period for Attorneys' Fees Actions Brought Under the Individuals with Disabilities Education Act, 79 Ind. L.J. 493 (2004). De esta forma, suplimos el silencio del legislador en perfecta hermenéutica. Por todo lo anterior, resolvemos que los foros recurridos actuaron correctamente al no decretar la desestimación de la demanda presentada por la señora Orraca López bajo el argumento de que estaba prescrita.

Cabe señalar que no alcanza a persuadirnos el argumento del ELA en el sentido de que la acción de recobro de honorarios que provee IDEA es una accesoria al procedimiento administrativo y que, por consiguiente, debe aplicarle un plazo de 30 días, como si fuera un recurso de revisión judicial. El planteamiento del Estado no encuentra sostén jurídico, toda vez que la naturaleza de la reclamación que surge de IDEA evidentemente difiere de la naturaleza de la revisión judicial de un dictamen administrativo. La acción de recobro de honorarios que autoriza IDEA no es de naturaleza apelativa, ya que no

existe una determinación administrativa que revisar en este contexto.[7] Por tanto, ésta exige unos criterios de aplicación y ejecución distintos a los de un recurso de revisión y hasta debe incoarse en un foro judicial distinto al que se presenta este último.[8] Así, cuando se insta una acción al amparo de la Sec. 1415(i)(3)(B)(i)(I) de IDEA, el foro judicial correspondiente determinará si la parte peticionaria fue la que prevaleció en el procedimiento administrativo y, de esa forma, utilizará su sana discreción para resolver qué cuantía de honorarios de abogado sería razonable conferir.[9] En consecuencia, el ELA incide al insistir en plantear que el plazo prescriptivo más análogo es aquel dispuesto para la revisión judicial de dictámenes administrativos. Más aún, parece olvidar que desde el 2009, al resolver el citado caso *Declet Ríos*, este Tribunal fue meridianamente claro al determinar que la reclamación de honorarios de IDEA supone una **acción independiente** ante los tribunales.

A su vez, resolvemos que tampoco tiene razón el ELA cuando aduce que un término prescriptivo de 3 años,

---

[7]Recordemos que solo los tribunales, en el ejercicio de su sana discreción, tienen facultad para conceder los honorarios de abogado al amparo de IDEA. Declet Ríos v. Dpto. de Educación, *supra*, pág. 781. Por consiguiente, la agencia administrativa no tiene autoridad para ello.

[8]Para un análisis de las diferencias entre la reclamación de honorarios de abogado en virtud de IDEA y el recurso de revisión judicial, véase D.A. Craig, *supra*.

[9]En el ejercicio de determinar la cuantía razonable de honorarios de abogado a conferirse, el foro judicial debe examinar los demás criterios enumerados en la Sec. 1415 de IDEA.

inevitablemente, le colocaría en un estado de indefensión. Todo lo contrario. Entendemos, más bien, que al establecerse el mencionado plazo se promueve la negociación entre las partes, lo que, sin duda, le evitará litigios y gastos innecesarios a éstas.

Atendido lo anterior, determinamos que el período de 3 años para incoar la acción al amparo de la Sec. 1415(i) (3)(B)(i)(I) de IDEA comienza a discurrir desde el día en que la Resolución final emitida por el foro administrativo adviene final y firme. A partir de ese momento, los padres o tutores adquieren conocimiento de que fueron la parte prevaleciente, por lo que quedan facultados para ejercer su derecho de recobrar honorarios de abogado.

En fin, resta por atender el segundo señalamiento del ELA dirigido a sostener que el pago de $600 adicionales por el trámite apelativo supone una imposición automática de honorarios por temeridad. Nuevamente, sostenemos que la razón tampoco ampara al ELA en este argumento. Es menester recordar que de la Sec. 1415 de IDEA surge de forma diáfana e inequívoca que la reclamación de honorarios al amparo de ésta aplica "*[i]n any action or proceeding brought under this section*".[10] Ello significa que una vez

_____

[10]En lo concerniente a por cuáles trabajos el foro judicial puede otorgar honorarios de abogado al amparo de IDEA, en Declet Ríos v. Dpto. de Educación, *supra*, pág. 780, interpretamos la Sec. 1415(i)(3)(B)(i)(I), en particular la frase "*[i]n any action* or proceeding *brought under this section*", y concluimos que por virtud de ésta el Congreso autorizó la concesión de honorarios por **los trabajos efectuados tanto en el procedimiento administrativo como ante los tribunales.**

ejercida debidamente la acción independiente en recobro de honorarios de abogado, los foros judiciales, tanto a nivel primario como a nivel apelativo, quedan facultados para imponer honorarios de abogado en virtud de lo dispuesto en la referida sección. Claro está, la concesión de tales honorarios estará sujeta a que se determine que éstos son **razonables** utilizando el ejercicio de la **sana discreción**. Ante ese cuadro, somos del criterio que el Tribunal de Apelaciones no erró al imponerle al ELA el pago de $600 adicionales por los honorarios de abogado incurridos por la señora Orraca López en el trámite apelativo. El foro apelativo posee autoridad para ejecutar tal curso de acción y la cantidad impuesta no nos parece irrazonable.

**VI**

Bajo el prisma de los fundamentos que anteceden, y al amparo de la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, confirmamos el dictamen emitido por el Tribunal de Apelaciones.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sylmarie Orraca López, en
representación del menor GRO

Recurridos

    v.                           CC-2014-270        Certiorari

Estado Libre Asociado de Puerto
Rico; Departamento de Educación

    Peticionarios


SENTENCIA
(Regla 50)

San Juan, Puerto Rico, a 10 de noviembre de 2014.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, y al amparo de la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, se confirma el dictamen emitido por el Tribunal de Apelaciones.

Notifíquese inmediatamente por teléfono, facsímil y por la vía ordinaria.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo