Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| DAVID JIMÉNEZ TORO EN REPRESENTACIÓN DE SU HIJO MENOR DE EDAD S.J.Q. <br><br> Apelantes <br><br> V. <br><br> YANIRA RAÍCES VEGA, EN SU CARÁCTER DE SECRETARIA DEL DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEPARTAMENTO DE JUSTICIA <br><br> Apelados | KLAN202500082 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Caso Núm.: SJ2024CV08976 <br><br> Sobre: Recurso de Auto Mandamus Perentorio |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 18 de marzo de 2025.

El 3 de febrero de 2025, compareció ante este Tribunal de Apelaciones, el señor David Jiménez Toro en representación de su hijo menor de edad S.J.Q. (en adelante, parte apelante), por medio de *Apelación.* Mediante esta, nos solicita que revisemos la *Sentencia* emitida y notificada el 5 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Desestimación* presentada por el Estado Libre Asociado de Puerto Rico por sí y en representación del Departamento de Educación (en adelante, parte apelada).

Por los fundamentos que adelante se exponen, se revoca el dictamen apelado y se devuelve el caso al foro primario para la

Número Identificador

SEN2025 _____

continuación de los procedimientos de conformidad con lo aquí resuelto.

**I**

El caso que nos ocupa tiene su génesis en un *Recurso de Auto de Mandamus* incoado el 26 de septiembre de 2024, por la parte apelante[1]. En esencia, la parte apelante sostuvo que, el 1 de octubre de 2023 presentó una *Querella* ante el Sistema de Querellas del Foro Administrativo de Educación Especial del Departamento de Educación, en la que solicitó que se le otorgara transportación por porteador con acompañante del hogar a la escuela y de la escuela al hogar, al menor S.J.Q. Dicha *Querella* fue declarada Ha Lugar mediante *Resolución* emitida el 24 de febrero de 2024, donde se le ordenó al Departamento de Educación de Puerto Rico (DEPR) que le brindara el servicio de transportación al menor S.J.Q.

Adujo que, más adelante, fue presentada una solicitud en virtud de la Ley federal Individuals with Disabilities Education Act (IDEA), y del Reglamento del Procedimiento para la Resolución de Querellas Administrativas de Educación Especial y Sobre la Otorgación de Honorarios de Abogados, Reglamento Núm. 9168 del 26 de febrero de 2020 (Reglamento Núm. 9168). Expresó que, la mencionada solicitud requirió al DEPR el pago de los honorarios de abogado correspondientes a la representación legal del menor S.Q.J., ascendentes a una cantidad de $2,737.00. Añadió que, las partes accedieron a que se emitiera *Resolución* por concepto de pago de honorarios por la cantidad de $2,500.00 a favor de la parte apelante. A tales efectos, en la *Resolución* emitida el 23 de mayo de 2024, se ordenó al DEPR el aludido pago dentro de un término de treinta (30) días laborales.

---

[1] Este fue enmendado mediante *Recurso de Auto de Mandamus Enmendado* presentado el 27 de septiembre de 2024.

Asimismo, la parte apelante sostuvo que, el 16 de julio de 2024, solicitó formalmente al DEPR, por conducto del licenciado Félix A. Pérez Rivera (en adelante, licenciado Pérez Rivera) que se informara el estado del proceso del pago de los honorarios de abogado que le habían sido concedidos. Indicó, además, que el 17 de agosto de 2024, recibió respuesta por parte del licenciado Pérez Rivera donde le notificó que la solicitud sería transferida a otro abogado para ser trabajada. En igual fecha, recibió un correo electrónico del licenciado Pedro A. Solivan Sobrino (en adelante, licenciado Solivan Sobrino) donde le indicó que estaría tramitando el asunto del pago de los honorarios de abogado. La parte apelante adujo que, mediante correo electrónico le notificó al licenciado Solivan Sobrino que, debido a la falta de comunicación y de pago de los honorarios de abogados, procedería a presentar un recurso de *Mandamus* con el propósito de que se cumpliera con la *Resolución* dictada por el Foro Administrativo. Señaló que, a la presentación del recurso de *Mandamus*, la parte apelada no había remitido el pago de los honorarios de abogado.

Por otro lado, la parte apelante argumentó que, el término de treinta (30) días para que el DEPR efectuara el pago de los honorarios de abogado había vencido el 23 de junio de 2024, sin que se recibiera dicho pago. Añadió que, los esfuerzos para que el DEPR realizara dicho pago habían sido infructuosos. Asimismo, acotó que, conforme a la Ley IDEA, nuestra Constitución y las Leyes de Puerto Rico, la parte apelada tenía el deber ministerial de cumplir con la orden emitida por un Juez del Foro Administrativo. De igual manera, adujo que, debido a que la parte apelada se encontraba obligada por ley a cumplir con sus deberes ministeriales, procedía que el foro *a quo* expidiera el *mandamus* donde le ordenara al DEPR a emitir el pago de los honorarios de abogado adeudados.

El 11 de octubre de 2024, la parte apelada incoó *Moción de Desestimación.* Por medio de esta, sostuvo que, la solicitud de *mandamus* debía ser desestimada debido a que, la parte apelante carecía de legitimación activa. Lo anterior, por motivo de que, la *Resolución* emitida por el Foro Administrativo dispuso que el pago de honorarios de abogado debía realizarse al licenciado Adrián Díaz Díaz. De igual manera, alegó que, no procedía la concesión de un *mandamus* debido a que existía un remedio adecuado y eficaz en ley. Argumentó que, dicho remedio era la ejecución de orden o resolución administrativa mediante la vía procesal ordinaria. Por tanto, solicitó al foro *a quo* que desestimara la causa de acción en su contra.

Posteriormente, la parte apelante presentó *Oposición a Moción de Desestimación.* En primer lugar, sostuvo que, era inmeritorio el planteamiento de falta de legitimación activa. Ello porque, para los efectos de la Ley IDEA es inmaterial que la *Resolución* autorizara el pago directo de honorarios a favor del licenciado Díaz Díaz, ya que, el derecho a reclamar los honorarios es de los querellantes. Acotó que, la acción instada respondía a que se le hiciera cumplir al DEPR un deber ministerial que surge de una ley federal y que había sido adjudicado por un Juez Administrativo mediante una resolución notificada y que no fue objeto de revisión judicial. Reiteró que, procedía que se declarara con lugar el *mandamus.*

El Tribunal de Primera Instancia emitió *Sentencia* el 5 de diciembre de 2024, notificada en igual fecha. El foro apelado razonó que, no procedía el recurso de *mandamus* debido a la existencia de un remedio adecuado en ley. Puntualizó que, la parte apelante tenía a su disposición el procedimiento ordinario de ejecución de órdenes o resoluciones administrativas. Finalmente, determinó lo siguiente:

> En vista de lo anterior expuesto, este Tribunal declara Ha Lugar la *Moción de Desestimación* presentada por la parte demandada. En consecuencia, se dicta Sentencia

mediante la cual se ordena la desestimación y el archivo de la demanda de epígrafe.

Inconforme con lo resuelto, la parte apelante acudió ante este foro mediante *Apelación*, en la cual esgrimió los siguientes señalamientos de error:

1. Erró el TPI al denegar la expedición del auto de *mandamus* al haber interpretado incorrectamente la naturaleza del deber ministerial del Departamento de Educación, en violación de las leyes Federales y Estatales que regulan la educación especial, pretiriendo de ese modo, la urgencia de los pagos de honorarios de abogados reclamados para asegurar el cumplimiento con el Debido Procedimiento de Ley de los estudiantes bajo IDEA.

2. Erró el TPI al denegar la expedición del auto de *mandamus*, ya que el Departamento de Educación tiene un deber ministerial de realizar el pago de honorarios.

3. Erró el TPI al denegar la expedición del auto de *mandamus* por considerar que existe un remedio ordinario dentro del curso de la ley que debe agotar el demandante-apelante.

El 5 de marzo de 2025, la parte apelada compareció mediante *Alegato*.

Con el beneficio de la comparecencia de las partes procedemos a resolver.

**II**

**A. Deferencia Judicial**

Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Ortiz Ortiz v. Medtronic*, supra, pág. 778, *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022)[2].

---

[2] Véase también *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

### B. Mandamus

La acción de *mandamus* está regida por la Regla 54 de Procedimiento Civil, 32 LPRA, Ap. V, R. 54 y el Artículo 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421 y siguientes. El *mandamus*, según lo define nuestra legislación, "es un auto altamente privilegiado dictado por el Tribunal Supremo del Estado Libre Asociado, o por el Tribunal Superior de Puerto Rico, a nombre del Estado Libre Asociado de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría, dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes". 32 LPRA sec. 3421; *Kilometro O, Inc. v. Pesquera López*, 207 DPR 200, 214 (2021); *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972 (2020); *Aponte Rosario et al. v. Pres. CEE II*, 205 DPR 407, 427 (2020).[3] Es

---

[3] Véase *Noriega v. Hernández Colón*, 135 DPR 406, 447 (1994).

decir, mediante este, se exige el cumplimiento de un deber ministerial dentro de las atribuciones o deberes del cargo que ocupa. *Kilometro O, Inc. v. Pesquera López,* supra, pág. 214. El "deber ministerial se refiere a un mandato específico que no admite ejercicio de discreción en su cumplimiento". *Íd.*; *Romero, Valentín v. Cruz, CEE et al.*, supra, pág. 985; *Aponte Rosario et al. v. Pres. CEE II*, supra, págs. 427-428. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo. 32 LPRA sec. 3421.

Como bien expresa la ley, el auto de *mandamus* es uno "altamente privilegiado". Esto significa que su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214. Dicha expedición "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". *AMPR v. Srio. Educación, ELA*, 178 DPR 253, 266 (2010). Lo que significa que, solo deberá expedirse cuando la parte peticionaria carece de "un recurso adecuado y eficaz en el curso ordinario de la ley". 32 LPRA sec. 3423; *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214; *Aponte Rosario et al. v. Pres. CEE II*, supra, pág. 428. La procedencia del *mandamus* depende inexorablemente del carácter del acto que se pretende compeler mediante dicho recurso. D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Ed. U.I.A., 1996, pág. 107. En resumen, solo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir dicho remedio. *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 454-455 (2006); *Báez Galib y otros v. CEE*, 152 DPR 382 (2000).

El *mandamus*, "aunque es un remedio en ley, participa de la índole de los de equidad". Por consiguiente, algunos principios

rectores de los recursos de equidad, como los que gobiernan el *injunction*, son aplicables al auto de *mandamus*. *AMPR v. Srio. Educación, ELA*, supra, pág. 263.

El requisito fundamental para expedir el recurso de *mandamus* reside, pues, en la constancia de un deber claramente definido que debe ser ejecutado. Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida". *AMPR v. Srio. Educación, ELA, supra*, págs. 263-264. Por tal razón, aquella persona que se vea afectada por el incumplimiento del deber podrá solicitar el recurso. *Id.*

Ahora bien, "antes de radicarse la petición de *Mandamus*, la jurisprudencia requiere, como condición esencial, que el peticionario le haya hecho un requerimiento previo al demandado para que éste cumpla con el deber que se le exige, debiendo alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. Sólo se exime de este requisito: 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; ó 2) cuando el deber que se pretende exigir es uno de carácter público, a diferencia de uno de naturaleza particular, que afecta solamente el derecho del peticionario". *Noriega v. Hernández Colón*, supra, págs. 448-449.

Entre los factores a tomarse en consideración cuando se solicita de un tribunal la expedición de un auto de *mandamus* se encuentran: el posible impacto que éste pueda tener sobre los intereses públicos que puedan estar envueltos; evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicios de los derechos de terceros. *AMPR v. Srio. Educación, ELA, supra*, pág. 268; *Kilometro O, Inc. v. Pesquera López*, supra, pág. 215.

En fin, el Tribunal Supremo de Puerto Rico, expresó en *Díaz González, v. Tribunal Superior*, 102 DPR 195, 199-200 (1974), citando a *Dávila v. Superintendente de Elecciones*, 82 DPR 264, (1960), pág. 283, lo siguiente:

> "Para que deba expedirse un auto de *mandamus*, sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto 'altamente privilegiado,' según expresa la ley de su creación, 32 L.P.R.A. sec. 3421 , y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial.
>
> En otras palabras, el remedio no se concede *ex debito justitiae* y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto."

Cabe destacar que, nuestro más Alto Foro ha expresado que, le "compete a los tribunales determinar si el deber ministerial surge o no de la ley aplicable", puesto que, "no depende de un juicio *a priori* fundado exclusivamente en la letra del estatuto". *Romero, Valentín v. Cruz, CEE et al.*, supra, pág. 986 citando a *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 418 (1982). Tal determinación deberá "surgir del examen y análisis de todos los elementos útiles a la función interpretativa". *Romero, Valentín v. Cruz, CEE et al.*, supra, pág. 986 citando a *AMPR v. Srio. Educación, ELA*, supra, pág. 264.

## C. *Honorarios de Abogado en Casos de Educación Especial*

Según es sabido, la Ley Federal IDEA tiene entre sus propósitos, asegurar que los niños y las niñas con impedimentos reciban una educación pública, apropiada, gratuita y que atienda las necesidades especiales de cada estudiante; que los derechos de

los menores con impedimentos y sus padres sean protegidos, y evaluar y asegurar la efectividad de los esfuerzos para educarlos. Ley Púb. Núm. 108-446, 20 USCA sec. 1400(d)(1), (2) y (4); *Declet Ríos v. Departamento de Educación*, 177 DPR 765, 773 (2009); *Orraca López v. ELA*, 192 DPR 31, 40 (2014).

En virtud de lo establecido en el estatuto federal y en amparo al mandato constitucional, la Asamblea Legislativa derogó la Ley Núm. 21, *supra*, y aprobó la Ley Núm. 51 de 7 de junio de 1996, conocida como "Ley de Servicios Educativos Integrales para Personas con Impedimentos", 18 LPRA sec. 1351 et seq. Esta Ley ratifica el derecho de las personas con impedimentos a recibir una educación pública, gratuita y de acuerdo a sus necesidades, que le permita desarrollarse plenamente y convivir con dignidad en la comunidad de la que forman parte. Con este propósito se establecen claramente las responsabilidades y funciones de todas las agencias que deben brindar servicios especializados y profesionales directos o relacionados a este sector de la población.[4] *Orraca López v. ELA*, supra, pág. 41.

Tanto la Ley IDEA como la Ley Núm. 51-1996, *supra*, le proveen a los padres o tutores que entiendan que los servicios ofrecidos no son apropiados o no van acorde con las necesidades especiales del menor, la opción de presentar una querella y solicitar una vista administrativa ante un oficial examinador imparcial. *Orraca López v. ELA*, supra, pág. 42.

Ahora bien, cónsono con los propósitos de la Ley IDEA y en reconocimiento de los gastos que conllevan los procedimientos, el Congreso de los Estados Unidos de América, desde el 1986 autorizó de manera expresa la concesión de honorarios de abogado a los padres de niños y niñas con impedimentos que cumplen con los

---

[4] Véase: Exposición de Motivos de la "Ley de Servicios Educativos Integrales para Personas con Impedimentos".

requisitos impuestos en esta. *Orraca López v. ELA*, supra, pág. 42; *Declet Ríos v. Departamento de Educación*, supra, pág. 778. De acuerdo a la Ley IDEA, los honorarios de abogado no tienen como propósito sancionar, sino, posibilitar que muchos padres y madres puedan vindicar los derechos de sus hijos e hijas con impedimentos. *Íd.*; *Orraca López v. ELA*, supra, pág. 43.

En cuanto a los honorarios de abogado, la Ley IDEA dispone lo siguiente:

**(i) Administrative procedures**

**[...]**

**(3) Jurisdiction of district courts; attorneys' fees**

**(A) [...]**

**(B) Award of attorneys' fees**

**(i) In general**
In any action or proceeding brought under this section, the court in its discretion, may award reasonable attorneys' fees as part of the costs—
(I) **to a prevailing party who is the parent of a child with a disability**;
(II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
(III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent´s complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.[5]

Nuestro Máximo Foro ha dispuesto que, para que se pueda ordenar el pago de honorarios de abogados, el estatuto federal

---

[5] 20 U.S.C. sec. 1415(i)(3)(B)(i).

requiere: "(1) la existencia de una acción, o un procedimiento, instada mediante la Sec. 1415, *supra*; (2) que los honorarios de abogado sean otorgados a la parte prevaleciente, según dispuesto y definido por esta ley, y (3) que la cantidad que vaya a otorgarse sea razonable y determinada conforme a esa sección". *Declet Ríos v. Departamento de Educación*, supra, págs. 779-780; *Orraca López v. ELA*, supra, pág. 43.

Por otro lado, el Reglamento Núm. 9168 fue creado con el propósito de regular los procesos relacionados con el proceso de querellas administrativas. De igual manera, otro de los propósitos del aludido reglamento es establecer el procedimiento que deberá seguirse para que los jueces administrativos otorguen los honorarios de abogado a la parte prevaleciente en la adjudicación de las querellas. Art. 1 del Reglamento Núm. 9168, *supra*.

El Reglamento Núm. 9168, en su Artículo 9[6], expresa que, unos de los derechos fundamentales en virtud de la Ley IDEA en los asuntos administrativos de radicación de Querellas es la otorgación de honorarios de abogados para la parte prevaleciente. El referido artículo, explica que, será considerada como parte prevaleciente aquella que:

> [A] través de su representante legal, obtiene un remedio que altera la relación legal entre las partes modificando la conducta de los demandados en una forma que directamente beneficia al Querellante. Basta con prevalecer en algún aspecto sustancial de la querella y no necesariamente en la totalidad de la reclamación para considerarse parte prevaleciente. Puede considerarse parte prevaleciente aun cuando el remedio obtenido no es idéntico al solicitado en la reclamación, pero que provee un remedio típico general igual.[7]

Asimismo, dispone que, para ser una *parte prevaleciente*, como requisito fundamental, será necesario que además de que el

---

[6] Por error o inadvertencia, el Reglamento 9168 extraído de http://app.estado.gobierno.pr/ReglamentosOnLine/Reglamentos/9168.pdf cuenta con dos artículos numerados 9. Cabe destacar que, el artículo aquí citado debió ser numerado como artículo 11, conforme a la secuencia de los artículos.

[7] Art. 9 (1)(b) del Reglamento Núm. 9168, pág. 37.

remedio obtenido altere la relación legal entre las partes, deberá fomentar y promover los propósitos de la Ley IDEA. Dicho remedio deberá ser ejecutable y obligado a ser cumplido por razón de una orden o por haber llegado a la obtención del remedio por acuerdo o consentimiento.[8] Con el propósito de que un juez administrativo determine la procedencia de honorarios de abogado, deberá cerciorarse de que se cumplan los requisitos establecidos en la Sec. 1415 de la Ley IDEA, *supra*, y la sección 34 C.F.R. sec. 330.517.[9]

Respecto al término y procedimiento para la solicitud de pago de honorarios de abogado, el Reglamento Núm. 9168 establece que, una vez se emita la resolución final de la Querella administrativa, el abogado de la parte prevaleciente podrá solicitar al Juez Administrativo la aprobación del pago de los honorarios de abogado dentro del término de treinta (30) días a partir de la fecha en que la resolución advenga final y firme. En caso de que se exceda el mencionado término, la aparte prevaleciente podrá recurrir al tribunal estatal o federal directamente.[10]

Cabe mencionar que, la concesión de partidas por concepto de honorarios de abogados no es automática, pues, serán concedidos a discreción del juez administrativo. Bajo su discreción resolverá qué cuantía de honorarios de abogado sería razonable conceder a la parte prevaleciente, tomando en cuenta los criterios para el tope establecido en el Art. 9.10 y la tarifa dispuesta en el Art. 9.11 del Reglamento.[11]

Sobre la determinación de los honorarios de abogado, el referido reglamento dispone:

a. Evaluada la razonabilidad de la solicitud bajo los criterios anteriormente indicados, el juez administrativo, dentro de los quince (15) días calendarios a partir de que la parte perdidosa presentó sus observaciones o dentro de los treinta

---

[8] Art. 9 (1)(c) del Reglamento Núm. 9168, pág. 37.
[9] Art. 9 (2) del Reglamento Núm. 9168, pág. 38.
[10] Art. 9 (3) del Reglamento Núm. 9168, pág. 38.
[11] Art. 9 (5) del Reglamento Núm. 9168, pág. 39.

(30) días calendarios de la presentación por la parte prevaleciente de la solicitud de honorarios de abogados, podrá aprobar, ajustar, reducir o denegar las horas y las partidas reclamadas, expresando en una resolución los fundamentos sobre los cuales descansa su determinación. De las partes someter un acuerdo transaccional, dentro del término de quince (15) días calendarios de presentado, el Juez administrativo deberá resolver conforme a derecho. El juez administrativo deberá notificar su resolución a los abogados de las partes y la Unidad Secretarial de Procedimiento de Querellas y Remedio Provisional (USPQRP).[12]

La parte prevaleciente **tendrá un término de treinta (30) días calendarios a partir de que la determinación del juez administrativo advenga final y firme**, para notificarla al DEPR para que proceda con el pago de los honorarios de abogados decretados.[13] (*Énfasis suplido*.) Deberá anejar la factura presentada.

No obstante lo establecido en el Reglamento Núm. 9168, *supra*, la parte prevaleciente en un caso al amparo de la Ley IDEA, siempre se reserva el derecho de instar su reclamación independiente de honorarios de abogado directamente ante los tribunales estatales o federales.[14]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

### III

En su primer señalamiento de error, la parte apelante sostiene que, el Tribunal de Primera Instancia incidió al denegar la expedición del *mandamus* al interpretar incorrectamente la naturaleza del deber ministerial del DEPR, en violación de las leyes Federales y Estatales que regulan la educación especial. Al preterir la urgencia de los pagos de honorarios de abogados reclamados, para asegurar el cumplimiento con el debido procedimiento de ley de los estudiantes al amparo de la Ley IDEA.

---

[12] Art. 9 (7)(a) del Reglamento Núm. 9168, pág. 41.
[13] Art. 9 (8) del Reglamento Núm. 9168, pág. 41.
[14] Art. 9 (12) del Reglamento Núm. 9168, pág. 43.

Como segundo señalamiento de error, la parte apelante aduce que, el foro *a quo* erró al denegar la expedición del *mandamus*, ya que el DEPR ostenta un deber ministerial de realizar el pago de honorarios.

En su tercer señalamiento de error, la parte apelante arguye que, la primera instancia judicial se equivocó al denegar la expedición del *mandamus* por considerar que existe un remedio ordinario dentro del curso de ley que debe agotar la parte apelante.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error antes esbozados de forma conjunta.

Adelantamos que, no le asiste la razón. No obstante, nos compete destacar que, el foro de primera instancia incidió al desestimar la causa de acción presentada por la parte apelante. Por tanto, procede que se revoque el dictamen apelado, pero por un fundamento distinto al propuesto por la parte apelante.

Según reseñáramos, luego de resultar como parte prevaleciente en una *Querella* ante el DEPR, la parte apelante presentó una solicitud en virtud de la Ley IDEA y del Reglamento Núm. 9168, donde solicitó el pago de los honorarios de abogados correspondientes a la representación legal el menor S.Q.J., ascendentes a una cantidad de $2,737.00. Las partes de epígrafe acordaron que el pago de los honorarios sería por la cantidad de $2,500.00 a favor de la parte apelante. A tales efectos, el Foro Administrativo acogió dicho acuerdo y emitió una *Resolución* el 23 de mayo de 2024, y le ordenó al DEPR realizar el pago de los honorarios de abogado dentro de un término de **treinta (30) días laborales**.

Luego de varias comunicaciones entre las partes, y transcurrido el término concedido sin que el DEPR emitiera el pago adeudado, la parte apelante presentó un recurso de *mandamus* ante el Tribunal de Primera Instancia. Este fue desestimado por el foro *a*

*quo,* en la medida en que existía un remedio adecuado en ley. Dicho remedio era el procedimiento ordinario de ejecución de órdenes o resoluciones administrativas.

Conforme el derecho reseñado, la expedición del auto de *mandamus* descansa en la sana discreción del foro judicial.[15] Este no procede cuando existe un remedio ordinario dentro del curso de la ley, ya que, su objeto no es reemplazar remedios legales, sino, suplir la falta de ellos.[16] Por tanto, este únicamente podrá expedirse cuando la parte peticionaria carece de un recurso adecuado y eficaz en el curso ordinario de la ley.[17]

Por otro lado, nuestra más Alta Curia ha señalado que, las agencias administrativas carecen del poder coercitivo que ostentan los tribunales para exigir el cumplimiento de órdenes y resoluciones.[18] En consonancia con lo anterior, la agencia administrativa o la parte favorecida por una decisión administrativa podrá solicitar al tribunal que ponga en vigor una resolución u orden. Los tribunales de primera instancia tienen a su disposición todos los mecanismos de ejecución de sentencia provistos por las Reglas de Procedimiento Civil para hacer cumplir las determinaciones.[19] El foro de primera instancia tiene facultad para mediante la vía ordinaria, de poner en vigor y ordenar la ejecución de una resolución u orden de una agencia administrativa, así como de conceder cualquier otro remedio adecuado ante el incumplimiento de las órdenes.[20]

Si bien es cierto que, no procedía la expedición del auto de *mandamus* por motivo de que la parte apelante tenía disponible el remedio de ejecución de la determinación administrativa mediante

---

[15] *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214.
[16] *AMPR v. Srio. Educación, ELA,*
[17] 32 LPRA sec. 3423; *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214; *Aponte Rosario et al. v. Pres. CEE II*, supra, pág. 428.
[18] *Ortiz Matías v. Mora Dev.*, 187 DPR 649, 655 (2013).
[19] *Íd.* pág. 657.
[20] *Íd.*

la vía ordinaria, tampoco procedía que el foro *a quo* desestimara su causa de acción. Por el contrario, en ánimo de salvaguardar la economía procesal, procedía que el Tribunal de Primera Instancia convirtiera el pleito al trámite ordinario en vista de que no existía controversia.

Ha transcurrido en exceso el término concedido por el foro administrativo para que la parte apelada emita el pago de los honorarios de abogado. No vemos razón por la cual se deba seguir dilatando el trámite afectando así, el derecho de la parte apelante a cobrar dichos honorarios. A tales efectos, procede la conversión del pleito al trámite ordinario y que el Tribunal de Primera Instancia ordene el pago de los honorarios de abogado, conforme a la *Resolución* y a las garantías procesales de la Ley IDEA, *supra* y el Reglamento Núm. 9168, *supra.*

## IV

Por los fundamentos antes expuestos, se revoca el dictamen apelado y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones